IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vincent Jerode Beaton, # 196947, ) | CIVIL ACTION NO. 9:15-0018-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Ms. Montgomery, Nurse; Ms. Stokes, ) | |
| Medical Director of Lee Institution; Ms. ) | |
| Fulton, Head Nurse; and Warden Davis, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on October 12, 2015. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 14, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Defendants thereafter supplemented their motion with an affidavit filed October 22, 2015, following which Plaintiff filed a memorandum in opposition to the Defendants' motion on November 30, 2015. Plaintiff has also filed some "declarations" with attachments (on December 9, 2015, January 20, 2016, and February 26, 2016), while the Defendants filed a reply memorandum on December 11,



1

2015.

The Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff alleges in his verified Complaint[2] that in August 2014, while housed at the Lee Correctional Institution (LCI), he was transported to medical where he was seen by the Defendant Montgomery, a nurse. Plaintiff alleges he complained to Montgomery that his toe was infected and that she "basically did not respond properly as needed . . .". Plaintiff alleges that Montgomery told him that he could be put on a list to see a physician, but that he "never seen any doctor at all". Plaintiff alleges that this was Montgomery's response even though she "openly stated on the day of sick call that my toe [infection] was the worst she has seen in her entire life". Plaintiff alleges that as of the date of his Complaint (around the first of January 2015),[3] he had still "not yet seen the doctor". Plaintiff alleges that he has therefore been denied treatment for his serious medical needs. Plaintiff further alleges that he wrote a grievance concerning this matter, but got no reply.

Plaintiff also alleges that the prison guards on his Unit (disciplinary segregation) "willfully disregarded" Plaintiff yelling for medical attention even though he was in pain due to a

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the factual allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3] Plaintiff's Complaint was filed on January 5, 2015; however, it was undated. Plaintiff was advised that he needed to sign and verify his Complaint, and he subsequently submitted a signed verification page dated January 21, 2014. See Court Docket No. 1-4.



bacterial infection. Plaintiff alleges that Montgomery failed to give him an "anti-bacterial" pill and failed to even note his condition on the "CRT notes", which Plaintiff alleges are mandatory for sick call procedure. Plaintiff alleges that all of the correctional officers at the institution need to be held accountable, including the Defendant Warden Davis, who Plaintiff wrote to but who failed to provide him any relief. Plaintiff seeks monetary damages and to be "seen by [an] outside doctor". See generally, Plaintiff's Verified Complaint.

In support of summary judgment in the case, the Defendant Elouise Montgomery has submitted an affidavit wherein she attests that she is a licensed registered Nurse at the Lee Correctional Institution, and that after reviewing Plaintiff's treatment records she believes that he has received appropriate and timely care for his medical complaints. Specifically with respect to Plaintiff's claim that on or around August 2014 she denied or delayed Plaintiff medical treatment or improperly documented same, Montgomery attests that the first time she ever saw the Plaintiff was on January 8, 2015, at which time he was complaining of weight loss, constipation, and discoloration of his toenails on his right and left feet. Montgomery attests that she had not seen the Plaintiff before that date.

Montgomery further attests that upon physical examination she noted some discoloration of Plaintiff's toenails, but that there was no indication of any infection, cracked skin, redness or irritation, nor did Plaintiff express any complaints of pain upon assessment of his toes. Montgomery attests that she noted her findings in addition to Plaintiff's request to be seen by a doctor, and that this encounter was signed off on by a doctor. Montgomery attests that Plaintiff's medical summary notes reflect that Plaintiff was seen again regarding complaints about his toes four months later, on May 4, 2015, when he presented with athletes foot and was prescribed some cream



to help resolve the redness and cracked skin noted between his toes. However, Montgomery attests that there was no cracked skin, redness, or irritation noted on Plaintiff's feet during his visit with her on January 8, 2015. Additionally, Plaintiff's medical summary notes reflect that he was seen by a physician on June 10, 2015 and was informed that there was no effective treatment for the discoloration of his toenails.

Montgomery attests that she followed proper procedures with regard to notification to the doctor or nurse practitioner following Plaintiff's visit on January 8, 2015, and that in addition to this encounter being signed off on by a doctor it was also signed off on by Nurse Practitioner Elizabeth Holcomb. See generally, Montgomery Affidavit.

The Defendant Willie Davis has submitted an affidavit wherein he attests that he is the Associate Warden at the Lee Correctional Institution, and that in this position he is not aware of any attempts to deprive Plaintiff of medical care. Davis attests that he does not provide medical treatment to inmates, but that if an inmate requests medical treatment, they are referred to the appropriate medical personnel. Davis attests that all non-emergency medical issues are addressed by inmates completing Request to Staff forms which are then referred to the medical department. The medical department then issues an order to report, and while appointments can be cancelled if an inmate's unit is on lock down, if it is an emergency the medical department is contacted to obtain further instructions. Additionally, inmates can also sign up for sick call, and if an inmate signs up for sick call they are seen by medical personnel and then charged Five Dollars from their inmate account. Davis attests that this is similar to a co-pay amount. See generally, Davis Affidavit.[4]

---

[4]In addition to Plaintiff's medical claim, Davis discusses numerous other issues in his affidavit which are not stated claims in this lawsuit, but are apparently intended to address or rebut other

(continued...)



The Defendants have also submitted an affidavit from Matthew Harper, who attests that he is a regional nurse coordinator for the Department of Corrections, and that in this position he is in charge of the medical administration regarding nurses at the Lee Correctional Institution. Harper attests that he is also a licensed registered nurse.

With respect to Plaintiff's allegations, Harper attests that he has attached a copy of Plaintiff's relevant medical summaries to his affidavit as Exhibit A. Harper attests that these medical summaries show that on April 4, 2014, Plaintiff was seen in sick call, where he complained that he was not getting enough fiber and was having trouble going to the bathroom. Plaintiff was provided with some fiber tablets. Plaintiff's next medical encounter record is not until September 3, 2014, which is a note signed by the Defendant Montgomery indicating that Plaintiff's scheduled visit to sick call had been canceled "per security", and that Plaintiff would be "rescheduled for sick call". This encounter was signed off on by Dr. Richard Bearden. An apparent attempt to reschedule Plaintiff's sick call visit for the following day was also canceled "per security". When Plaintiff was finally seen in sick call on September 8, 2014, it was by Nurse Elizabeth Brown, not the Defendant Montgomery. Further, Plaintiff's complaints on that day included a rash on his head, constipation, and he was requesting a different diet. There is nothing in this medical encounter note to indicate that Plaintiff was having any problems with his toes.

Plaintiff's medical records show that he was thereafter seen again in sick call on January 8, 2015, this time by the Defendant Montgomery. Plaintiff's complaints on that day included weight loss, constipation, having been "gassed" which was causing him to cough, and that

---

[4](...continued)
complaints Plaintiff has generally about the prison.



his toenails on his feet were discolored. With respect to this last complaint, the medical notes reflect that upon examination some of Plaintiff's toenails were discolored, but there was no active or dry drainage noted and Plaintiff had no complaints of pain when his toes were assessed. Plaintiff was advised that the encounter notes for this visit would be sent to the "MD/NP" for review, and in fact this encounter note was signed off on by three individuals: Nurse Practitioner Holcomb, Licensed Practical Nurse Hubbard, and a Debbie Anderson, who is listed as "unclassified".

Plaintiff's medical records reflect that he thereafter continued to be seen in medical at regular intervals, with a medical entry for March 25, 2015 indicating that labs had been drawn and that there was no indication that Plaintiff had any infection in his blood. Medical notes from May 4, 2015 include diagnoses that Plaintiff had some fungus problems between his toes and on his toenails which was believed to be athlete's foot and for which he was given instructions for care and treatment of this condition, as well as a medical encounter on June 10, 2015 where a "Dr. Byrne" examined Plaintiff's toenails and advised him that the discoloration of his toenails was generally not treated as there were no effective treatments and the condition often reoccurred.

Harper attests that these records reflect that Plaintiff was properly evaluated and treated for his complaints, and that there is no evidence that he was refused medical attention or that the treatment he received fell below the accepted standards of medical practice. Harper further attests that at no time did Plaintiff's condition become serious or life threatening, nor is there any indication that he had any significant injury or health condition. With respect to the Defendant Montgomery's treatment of the Plaintiff on January 8, 2015, Harper attests that he does not see any evidence that Montgomery breached any standard of nursing care, and further notes that Montgomery is not in control of when an inmate sees a doctor. See generally, Harper Affidavit, with attached

Exhibit [Medical Records].

   The Defendants have also submitted an affidavit from John McRee, Acting Medical Director for the SCDC, who attests that he is a licensed medical doctor and is in charge of the medical administration at the correctional institutions.  Dr. McRee attests that he has reviewed Plaintiff's treatment records, including Plaintiff's medical summaries (a copy of which are attached to his affidavit as Exhibit A), and that Plaintiff received appropriate medical care.  Dr. McRee attests that Plaintiff's medical records reflect that he was evaluated and properly treated every time the medical staff was advised of his medical complaints, that there is no indication that Plaintiff was refused medical attention or that the treatment he received fell below the accepted standards of medical practice, and that Plaintiff received care which was well above the reasonable standards required.  Dr. McRee further attests that at no time did Plaintiff's condition become serious or life threatening, nor is there any indication that he had any significant injury or health condition.

   With respect to Plaintiff's visit to the medical clinic on January 8, 2015, Dr. McRee attests that after this sick call visit Plaintiff was placed on the needs list to see the doctor, but that since there was at that time a backlog of inmates requesting to be seen by a doctor, scheduling was based on urgency of needs and that Plaintiff's complaints and physical examination were not such that would have warranted any immediate treatment.  Dr. McRee further attests that any complaints by the Plaintiff about discolored toenails on this visit would not have caused him to receive any greater priority on the needs list.  Dr. McRee attests based on a reasonable degree of medical certainty that Plaintiff has not suffered any injuries caused by or in any way related to the medical treatment or the timing of the medical treatment provided to him at the Correctional Institution.  See generally, McRee Affidavit, with attached Exhibit [Medical Records].



The Defendants have also submitted an affidavit from James Simmons, who attests that he is the Inmate Grievance Administrator for the Department of Corrections, and that although Plaintiff alleges in his Complaint that he filed a grievance in or around August 2014 about being denied medical access and proper treatment, he has reviewed the inmate grievance forms for the Plaintiff and that Plaintiff did not file any inmate grievances in August 2014, nor are their any grievance forms filed on any date from January 2014 to the date of Simmons' Affidavit (October 2, 2015) that pertained to Plaintiff's toes or his need to see a doctor.[5]  See generally, Simmons Affidavit.[6]

In his response in opposition to the Defendants' motion, Plaintiff states that he incorrectly identified August 20, 2014 in his Complaint as being when he complained to Montgomery about his toe, and that the correct date is January 8, 2014. See Court Docket No. 47, p. 1.[7]  Plaintiff has attached numerous exhibits to his response in opposition, only a few of which relate to the claim Plaintiff is asserting in this lawsuit.[8]  Plaintiff's exhibits include copies of some

---

[5]Failure to exhaust remedies provided by a prison grievance system before filing a federal lawsuit is grounds for dismissal of the lawsuit. See 42 U.S.C. § 1997e(a) ["[N]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."]; Booth v. Churner, 532 U.S. 731, 741 (2001). However, the Defendants have not moved for summary judgment on this basis. Therefore, Plaintiff's claim has been addressed on the merits.

[6]Defendants have also provided some additional affidavits and exhibits that do not relate to the claim Plaintiff is asserting in this lawsuit. As an analysis of that evidence is not necessary for a resolution of Plaintiff's claim, it has not been discussed herein.

[7]It appears that Plaintiff really means January 8, 2015.

[8]Plaintiff also talks in his response about requesting legal material and about being required to go to medical when it was "freezing" outside and he had no coat. However, to the extent Plaintiff
(continued...)

8



of the Defendants' exhibits, as well as numerous exhibits which (apparently) deal with the criminal conviction for which he is incarcerated. Similarly, in Plaintiff's "declaration" of December 9, 2015 (Court Docket No. 49), he appears to be complaining about his criminal indictment, and he has attached exhibits to that declaration which also appear to relate to his criminal case. In his declaration of January 20, 2016 (Court Docket No. 53), Plaintiff states that he wants to sue his post conviction relief attorney. His supporting documents attached to that declaration (totaling 58 pages) again all appear to relate to his criminal charge and conviction. Finally, Plaintiff's declaration and attached exhibits of February 26, 2016 (Court Docket No. 54) also relate to his underlying criminal conviction, and not to the claim being asserted in this case.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

---

[8](...continued)
is now attempting to insert these as claims in this lawsuit, they have not been considered. Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) [Party may not expand its claims to assert new theories in response to summary judgment]; White v. Roche Biomedical Labs, Inc., 807 F.Supp. 1212, 1216 (D.S.C. 1992) [Parties generally not permitted to raise a new claim in response to a motion for summary judgment].



Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review of the arguments and evidentiary exhibits presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

In order to proceed with a claim for denial of medical care as a constitutional violation, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence before this Court shows that Plaintiff received continuous and ongoing treatment for his medical complaints.

With respect to Plaintiff's specific claim that the Defendant Montgomery failed to provide him with proper treatment for an infected toe in August 2014, there is no evidence that Plaintiff was ever seen by the Defendant Montgomery in August 2014, or that he ever complained about an infected toe during that period of time. Indeed, Plaintiff appears to have abandoned this allegation, stating in his response to the Defendants' motion for summary judgment that he actually meant to refer to when he was seen by the Defendant Montgomery on January 8, 2015. However,



there is nothing in Plaintiff's medical records (copies of which have been provided to the Court) to show that Montgomery, or anyone else,[9] was deliberately indifferent to his serious medical needs at that time. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997)["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

Plaintiff's medical summary notes show that he was ultimately diagnosed with athlete's foot along with a non-serious condition relating to discoloration of his toenails. Further,

---

[9] Indeed, two of the named Defendants (Stokes and Fulton) are not even mentioned or referenced anywhere in the allegations of Plaintiff's Complaint. As for the other Defendant, Willie Davis, while public officials such as Davis are subject to monetary damages under § 1983 in their individual capacities, there is no evidence, or even any allegations to show, that Davis was responsible for Plaintiff's medical care. Davis was the Associate Warden of the prison, not a physician. The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 cases; see Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977) and Davis cannot therefore be held liable for any medical decisions made by the prison medical personnel just because they are employees of the prison. Rather, supervisory officials may be held liable in a § 1983 action only for an official policy or custom for which they are responsible and which resulted in illegal action. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). No such policy or custom is alleged here. Plaintiff's complaint is simply that the medical personnel involved in his case did not make (in his opinion) the proper medical decisions about what should be done about his toes. See, discussion hereinabove, supra and infra. To the extent Davis was involved in this matter at all, he was entitled to rely on the judgment and decisions made by the medical professionals who saw the Plaintiff with respect to Plaintiff's medical care. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]. Hence, even if the Court were to find that Plaintiff's claims against Montgomery are sufficient to survive summary judgment, Davis, Stokes and Fulton would all be entitled to dismissal as party Defendants.



the Defendants have provided sworn affidavits from medical professionals attesting that Plaintiff's condition was properly evaluated, that there is no indication that Plaintiff had any significant injury or health condition, and that in their professional opinions to a reasonable degree of medical certainty Plaintiff received proper medical care and treatment for his complaints. Plaintiff's mere lay opinion that he had a serious medical condition and disagreement with the opinions or diagnoses of these medical professionals, without any contrary *medical* evidence to show that any medical professional violated the requisite standard of care for his complaints, is not sufficient to maintain a §1983 deliberate indifference lawsuit. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

Hence, while Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence showing that Plaintiff was regularly seen and evaluated by medical personnel for his complaints, and which refute Plaintiff's claims. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent



12

pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

Plaintiff may, of course, pursue a claim in state court if he believes that the medical care provided to him constitutes malpractice. However, that is not the issue before this Court. Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. As the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, the standard for a *constitutional claim*, Plaintiff's federal § 1983 medical claim should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

March 9, 2016                                    Bristow Marchant
Charleston, South Carolina            United States Magistrate Judge

13



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>Post Office Box 835
>Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

